In Re HOGAN'S ESTATE. MULHERIN v. EVANS.

No. 4917. Decided March 10, 1930. (297 P. 1007.)
Rehearing Denied April 9, 1931.

*DeVine, Howell, Stine & Gwilliam,* of Ogden, for appellant.
*C. R. Hollingsworth,* of Ogden, for respondent.

STRAUP, J.

This appeal involves a distribution of funds of a policy of war-risk insurance issued in pursuance of an act of Congress to John W. Hogan, a resident of Ogden, Utah, and who, in the military service of the United States in the late war, was killed in France in 1918. The policy was in the sum of $10,000. The beneficiaries named therein were his wife, Cora Kelly Hogan, also a resident of Ogden, and his sister, Margaret Hogan, who later was married to a Mr. Mulherin, each, on the death of the insured, to receive $5,000 of the policy in two hundred forty monthly installments of $28.75 to be paid to each. After the death of the insured, his wife, Cora Kelly Hogan, married a Mr. Hawkins. She died in June, 1926. After Hogan's death in 1918, and until June, 1926, when his wife died, each of the beneficiaries received their respective monthly installments of $28.75; and thereafter, and at the time of the hearing of this cause, the sister continued to receive the monthly installments of $28.75 payable to her. There is no controversy with respect to the monthly installments of $28.75 to be paid to her until the sum of $5,000 provided by the policy to be paid to her is paid.

After the death of the wife of the insured, an administrator of the insured's estate was appointed, and the present value of the remaining unpaid installments to be paid to the wife, amounting to about $3,473, was, by the government,

paid to such administrator. At the time of Hogan's death, the only next of kin surviving him were his wife and his sister, the beneficiaries named in the policy. Hogan died intestate. He left no estate of either personal or real property, except such as resulted from the policy.

Under the statute of descent or inheritance of this state (Comp. Laws Utah 1917, § 6408), where a husband or wife dies intestate leaving no issue, all of the estate, real and personal, of the deceased, if not in value to exceed $5,000, goes to the surviving husband or wife. If the value of the estate is in excess of $5,000, one-half of the excess goes to the surviving husband or wife and the other half to the father and mother of the deceased; and, if there be neither father nor mother surviving, then one-half of the excess goes to brothers and sisters of the deceased. Hogan left no child or children, nor father or mother, nor brothers or sisters, surviving him, except his sister, Margaret Hogan Mulherin. And he left surviving him his wife, Cora Kelly Hogan.

What divides the parties is how the moneys in the hands of the administrator of the estate of John W. Hogan, deceased, and paid to him by the government as the present value of the installments unpaid to Cora Kelly Hogan at the time of her death, should be distributed. The sister, the appellant, contends that they should be distributed to her, because she was the sole surviving heir of Hogan, not at the time of his death, but at the time of the death of his wife, and when the moneys were paid to the administrator of the estate of Hogan. It is the contention of the respondent, and the court ruled, that the moneys were required to be distributed to those who were the heirs of Hogan at the time of his death, and not to those who were his heirs at the time of the death of his wife, the beneficiary; and hence the moneys were to be paid to an administrator or other representative of the estate of the deceased's wife and to be distributed to her heirs, she having been the sole heir of Hogan at his death. From that judgment the sister has prosecuted this appeal.

The record does not definitely show who constitute the heirs of the deceased's wife. It is stated in the brief of appellant that the wife left surviving her a son of about twenty-one years of age by a former marriage, but that the name or present whereabouts of the son is unknown. It is further shown that, after the death of Hogan, she married Hawkins, but it is not shown just when that marriage took place, or whether any issue resulted therefrom. Nor is it shown whether Hawkins was her husband at the time of her death, nor whether she left surviving her a father or mother, or any brothers or sisters. The ruling of the court merely directed the moneys to be paid to the administrator or other representative of the estate of the deceased's wife. In the brief of the respondent it is stated that the wife was divorced from Hawkins, and that he was not her husband at the time of her death. But we see nothing in the record to support that. On the contrary, the appellant in her brief argues that, if the judgment of the court below is affirmed, the moneys in the hands of the administrator of Hogan's estate will be distributed to Hawkins, who, under the laws of this state, as the surviving husband of Mrs. Hawkins, will take the whole of the funds, who is an entire stranger in blood to Hogan, and who had no insurable interest in the life of Hogan, who is not one under the act of Congress included in the class of beneficiaries who may be a beneficiary nor one for whose benefit the policy was issued, and who in no sense under the act could either directly or indirectly be made a beneficiary.

The determinative factor in the case thus turns on the proposition of whether the moneys in the hands of the administrator of Hogan, deceased, should be distributed to those who were his heirs at the time of his death or to those who were his heirs at the time of the death of the beneficiary named in the policy. The first act of Congress relating to War Risk Insurance, c. 105, art. 4, 40 Stat. 398, 409, passed in 1917, so far as material, provides:

"The insurance * * * shall be payable only to a spouse, child, grandchild, parent, brother or sister, * * * or to any or all of them. * * * Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy. If no such person survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value, if any, of the insurance at the time of his death, calculated on the basis of the American Experience Table of Mortality and three and one-half per centum interest in full of all obligations under the contract of insurance." (Section 402.)

The act in December, 1919 (41 Stat. 375), was amended by enlarging the class of beneficiaries so as to include uncles, nephews, nieces, brothers, and sisters-in-law. It was again amended and re-enacted in World War Veterans' Act of 1924, c. 320, 43 Stat. part 1, 607-624. As amended, it retained the permitted class of beneficiaries, and, so far as material, provides:

Sec. 303. "If no person within the permitted class of beneficiaries survive the insured, or if before the completion of payments the beneficiary or beneficiaries shall die and there be no surviving person within said permitted class, then there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable under the provisions of this title." (43 Stat. 625.)

In March, 1925, section 303 was again amended, chapter 553, 43 Stat. 1302-1310, 38 USCA § 514, p. 252, so as to read as follows:

"If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter pay-

payable, said value to be computed as of date of last payment made under any existing award: Provided, That all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this Act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this Act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person: Provided further, That no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: Provided further, That in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917."

The policy of insurance contains the provision that:

"This insurance is granted under the authority of the Act approved October 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto and of all regulations thereunder now in force or hereafter adopted. All of which, together with the application for this insurance and the terms and conditions published under authority of the Act, shall constitute the contract."

Under the act it thus is the contention of the administrator of the estate of Hogan, the respondent, that, inasmuch as the wife of Hogan, the beneficiary, survived the insured, and died prior to receiving all of the two hundred and forty installments to be paid to her, the present value of such unpaid monthly installments which would have been paid her had she lived was required to be paid, as it was, to the estate of the insured and to be distributed to those who were the heirs of the insured at the time of his death; and, as the wife was then the sole heir, and having since died, the moneys should be paid by the respondent to an administrator or other representative of her estate to be distributed to those who constitute her heirs at the time of her death. To support that the respondent has cited a large number of cases: *Palmer* v. *Mitchell,* 117 Ohio St. 87, 158 N. E. 187, 55

A. L. R. 566; *In re Fink's Estate*, 191 Wis. 349, 210 N. W. 834; *In re Singer's Estate*, 192 Wis. 524, 213 N. W. 479; *Estate of William T. Ryan*, 129 Misc. Rep. 248, 222 N. Y. S. 253, affirmed 220 App. Div. 835, 222 N. Y. S. 891; *Woodworth* v. *Tepper*, 152 Md. 332, 136 A. 536, 55 A. L. R. 578; *Battaglia* v. *Battaglia* (Tex. Civ. App.) 290 S. W. 296; *Pivonka's Estate*, 202 Iowa, 855, 211 N. W. 246, 55 A. L. R. 570; *Ogilvie's Estate*, 291 Pa. 326, 139 A. 826; *Perrydore* v. *Hester*, 215 Ala. 268, 110 So. 403; *Williams* v. *Eason*, 148 Miss. 446, 114 So. 338, 55 A. L. R. 574; *National Union Bank* v. *McNeal*, 148 S. C. 30, 145 S. E. 549; *Petition of Robbins*, 126 Me. 555, 140 A. 366; *Branch Banking & Tr. Co.* v. *Brinkley*, 196 N. C. 40, 144 S. E. 530; *McDaniel* v. *Sloan*, 157 Tenn. 686, 11 S. W. (2d) 894; *Childers* v. *Pollock*, 178 Ark. 1031, 13 S. W. (2d) 8; *Whaley, Adm'r* v. *Jones, Adm'r*, 152 S. C. 328, 149 S. E. 841; *In re Root*, 58 N. D. 422, 226 N. W. 598.

The appellant, the sister of Hogan, to support her contention that the proper interpretation of the act requires the moneys in the hands of the administrator of the estate of Hogan to be paid to those who constituted his heirs, not at the death of Hogan, but at the death of the beneficiary, his wife, and, as the sister then was the sole surviving heir of Hogan, the moneys were required to be distributed to her, cites the following cases: *Sutton* v. *Barr*, 219 Ky. 543, 293 S. W. 1075; *Salzer* v. *U. S.* (D. C.) 300 F. 764; *Id.* (C. C. A.) 300 F. 767; *Cassarello* v. *U. S.* (D. C.) 271 F. 486; *Id.* (C. C. A.) 279 F. 396; *U. S.* v. *Woolen* (C. C. A.) 25 F. (2d) 673; *Helmholz* v. *Horst* (C. C. A.) 294 F. 417; *O'Quain* v. *U. S.* (D. C.) 28 F. (2d) 350; *Id.* (C. C. A.) 31 F. (2d) 756; *White* v. *U. S.*, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530.

It is not practical, nor necessary, to here review all of the cited cases, nor to attempt to distinguish them where distinguishable. On an examination of the cited authorities we are of the opinion that the great weight of authority supports the contention of the respondent. That, considering the number of cases, is, in effect, not disputed by the appellant. In effect, she further concedes that about the only case

cited by her which directly and fully supports her contention and which goes to the extent claimed by her is the case of *Sutton* v. *Barr,* supra. At least some of the other cases cited by her are either distinguishable or not applicable to the particular question under consideration. We do not say all of the cases cited by respondent, either directly or in principle, fully support his contention. However, we think many and sufficient of them do show what may be regarded the weight of judicial authority. They certainly constitute the undoubted majority rule. The views and the reasons therefor are there stated. We find it unnecessary to elaborate on them. By adopting such rule, as we do, leads to an affirmance of the judgment. It therefore is affirmed, with costs to the respondent.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

On Petition for Rehearing.

PER CURIAM.

A petition for a rehearing was filed by the appellant. In support thereof appellant cited additional cases, *In re Cross' Estate,* 152 Wash. 459, 278 P. 414; *In re Wanzel's Estate,* 295 Pa. 419, 145 A. 512; *In re Meisenhelter's Estate,* 297 Pa. 292, 146 A. 900; *Tax Commission of Ohio* v. *Rife,* 119 Ohio St. 83, 162 N. E. 390; *Sabin's Estate,* 131 Misc. Rep. 451, 227 N. Y. S. 120; *Succession of Geier,* 155 La. 167, 99 So. 26, 32 A. L. R. 353; *In re Hallbom's Estate,* 179 Minn. 402, 229 N. W. 344, which it is claimed directly support the case of *Sutton* v. *Barr,* 219 Ky. 543, 293 S. W. 1075, cited and especially relied on by the appellant on the original hearing. Some of them do support it, particularly *In re Cross' Estate,* supra.

On the other hand, the respondent refers to additional cases, especially *Wade et al.* v. *Madding,* 161 Tenn. 88, 28 S. W. (2d) 642, and *Condon* v. *Mallan,* 58 App. D. C. 371, 30 F. (2d) 995, as supporting, as we think they do, the contention of the respondent. While from a consideration of the

additional cases cited by both parties, and reconsidering the cases heretofore cited by both of them, we think a greater conflict exists in the adjudicated case than at first was made to appear, yet we still are persuaded, and as expressed by the Tennessee court (*Wade et al.* v. *Madding,* supra, decided May 31, 1930), that the weight of judicial authority is with the contention of the respondent.

The petition for rehearing is therefore denied.