LAND, J.
John Yoist, white, and Eudora Bergeron, colored, lived together in concubinage from the year 1870 to the time of his death, in July, 1910. Two children were born of this irregular union, Henry J. Yoist in 1873, and Eudora Yoist in 1884. At the time of the conception and birth of these children, there was no legal impediment to the intermarriage of their father and mother.
On January 26, 1905, John Yoist duly acknowledged said children by notarial act, and two days later, before the same notary, legitimated them, pursuant to provisions of article 200 of the Civil Code. Yoist never married, and died leaving no ascendants, but a number of collateral relations. By last will and testament, John Yoist devised to his sister, Elizabeth A. Wilson, the usufruct during her lifetime of the Rigny place and its revenues, and instituted his children, Henry and Eudora, as his universal legatees.
The collateral heirs of the decedent instituted suit to annul said universal legacy, on the ground that the legatees were the illegitmate children of the deceased by a colored woman, and that it was incompetent under the law for him to legitimate such issue by notarial act. The executors and legatees answered that the latter had been duly and lawfully acknowledged and legitimated by notarial acts1, as above stated.
There was judgment in favor of the collateral heirs as prayed for, and the defendants have appealed.
It is conceded that the children of John Yoist could have been legitimated by notarial act, under Civil Code, art. 200, at any time prior to the passage of Act 54 of 1894, amending Civil Code, art. 94, by adding the following provision:
“Marriages between white persons and persons of color are prohibited, and the celebration of such marriages is forbidden, and such celebration carries with it no effect, and is null and void.”
It is argued by appellees that said amendment operated as a bar to the legitimation of the children of John Yoist, not only by marriage, but by notarial act.
'In Davenport v. Davenport, 116 La. 1009, 41 South. 240, 114 Am. St. Rep. 575, it was held in effect that Act 54 of 1894 did not prohibit the legitimation of the natural children of a white man and colored woman. In that case the petition of the collateral heirs assailed the will of the deceased on the ground, among others, that the legatees were “the unacknowledged illegitimate children of *312 the deceased by his illicit connection with a colored woman.” The legatees contended that they had been acknowledged and legitimated by a notarial act, signed by their father and mother, on September 14, 1904. On the trial it was proved beyond question that the father was a white man and the mother a colored woman. In the district court there was judgment in favor of the legatees, and on appeal the judgment was affirmed by the Supreme Court, and the opinion shows that the proposition that “Act No. 54 of 1894, prohibiting marriage between whites and persons of color, has the effect of precluding the legitimation of the issue of the illicit union of such persons1,” was urged by counsel for the appellants, and was necessarily overruled by the decree, affirming the judgment below in favor of the children, who claimed to have been legitimated by a notarial act executed 10 years after the passage of Act No. 54 of 1894. That statute prohibited marriages between white persons and persons of color, but had no retroactive effect as to marriages of that kind which had been previously consummated. Under the Civil Code of 1870, the children of John Yoist had acquired the status of natural children, with the capacity of being legitimated by one of their parents by notarial act, or both of them by subsequent marriage. Act 54 of 1894 put an end to the latter mode of legitimation, by prohibiting the marriage of the parents of such children. Article 200 of the Civil Code, providing for legitimation by notarial act, is not conditioned on the future marriage of the parents, but is based on the natural duty of parents to acknowledge and care for their children, and to give them a status in the community. There is nothing in the legitimation of children of mixed blood that is repugnant to public policy or opposed to good morals. Legitimation by notarial act is not permitted in any case where there exists on the part of the parents legitimate ascendants or descendants. Civil Code, art. 200. Collaterals are not forced heirs, and therefore are not considered in the matter of the legitimation of natural children. There is nothing in the provisions of Act 54 of 1894 to indicate the intent to repeal article 200 of the Civil Code, and repeals by implication are not favored in law.
It is therefore ordered that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that the demands of Mrs. Maggie G. Brown and .others, appellees herein, be rejected, and their petition be dismissed, with costs in both courts.